# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

Camelot Banquet Rooms, Inc.,
Downtown Juneau Investments, LLC,
Midrad, LLC, and
PPH Properties I, LLC

        Plaintiffs,

      v.                  Case No. 20-cv-601

United States Small Business
Administration; Jovita
Carranza, in her Official Capacity as
Administrator of the Small Business
Administration; United States Of
America; and Steven Mnuchin, in his
Official Capacity as United States
Secretary of Treasury,

        Defendants.

# COMPLAINT

## I.    NATURE OF ACTION

101.    This is a civil action brought by the Plaintiffs in order to obtain

emergency declaratory and injunctive relief restraining Defendants from

discriminating on the basis of the content of speech or damages resulting from

discrimination that has already occurred.  Plaintiffs seek to prevent Defendants

from discriminating against workers who are entitled to benefit from the Paycheck Protection Program ("PPP") provisions of the recently-enacted Coronavirus, Aid, Relief, and Economic Security Act, Pub. L. No. 116-136 §§ 1101- 03, 1107, 1114 (2020) (the "CARES Act"). The PPP is designed to quickly provide emergency relief to workers and businesses affected by the current COVID-19 pandemic following the President of the United States declaring a national emergency.

102.    However, the emergency regulations promulgated by the Small Business Administration to implement the PPP, which in part adopt existing regulations formulated to implement narrower, existing, loan programs, unconstitutionally deprive businesses and workers who are engaged in First Amendment protected expression from receiving benefits. The regulations and operating procedures conflict with the text of the PPP and violate businesses' and workers' fundamental rights under the First and Fifth Amendments of the United States Constitution, among others.

103.    Because the funding of the PPP is implemented on a first-come, first-served basis until the fund is depleted, Plaintiffs bring this action on an emergency basis and seek a Temporary Restraining Order to prevent irreparable injury to their workers, their business, the entertainers who perform on their premises, and all their constitutional rights.

## II.    JURISDICTION AND VENUE

201.    This Court has jurisdiction over this action pursuant to 28 U.S.C.

§§ 1331, 1346(a)(2) and (b)(2), 1361, and 2201.

202.    Authority for judicial review of agency action is further provided

by 5 U.S.C. § 702, which states:

> A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party. The United States may be named as a defendant in any such action, and a judgment or decree may be entered against the United States: *Provided*, That any mandatory or injunctive decree shall specify the Federal officer or officers (by name or by title), and their successors in office, personally responsible for compliance. Nothing herein (1) affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground; or (2) confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.

203.  The jurisdiction of the Court to grant injunctive relief is conferred

upon this Court by Rule 65 of the Federal Rules of Civil Procedure and by 28

U.S.C. § 2202, which provides: "Further necessary or proper relief on a declaratory

judgment or decree may be granted, after reasonable notice and hearing, against

any adverse party whose rights have been determined by such judgment."

3

204.   The Eastern District of Wisconsin is the proper venue for this action because the Plaintiff's claims arose within the geographical boundaries of the Eastern District of Wisconsin within the meaning of 28 U.S.C. § 1391(b).

## III.   PARTIES and RELEVANT STATUTES and REGULATIONS

A.   <u>Plaintiffs</u>

301.   The Plaintiff Camelot Banquet Rooms, Inc. is a Wisconsin corporation with the capacity to sue and be sued in this court; it owns and operates a Silk Exotic Gentlemen's Club located at 11400 Silver Spring Road, Milwaukee, Wisconsin 53225.

302.   The Plaintiff Downtown Juneau Investments, LLC, is a Wisconsin limited liability corporation with the capacity to sue and be sued in this court; it owns and operates a Silk Exotic Gentlemen's Club located at 144 East Juneau Avenue, Milwaukee, Wisconsin 53202.

303.   The Plaintiff Midrad, LLC, is a Wisconsin corporation with the capacity to sue and be sued in this court; it owns and operates a Silk Exotic Gentlemen's Club located at 7302 U.S. Hwy 14, Middleton, Wisconsin 53562.

304.   The Plaintiff PPH Properties I, LLC, is a Wisconsin corporation with the capacity to sue and be sued; it owns and operates a Silk Exotic

4

Gentlemen's Club located at 730 North Old World Third Street, Milwaukee, Wisconsin 53203.

305. Each of the Silk Exotic Gentlemen's Clubs owned by the Plaintiffs is a nightclub that is licensed to serve alcoholic beverages and to present erotic entertainment for its patrons.

306. None of the four Silk Exotic Gentlemen's Clubs has a conviction for violation of any local, state, or federal law or regulation, and no claims of violations of any local, state, or federal law are pending against any Silk club.

B.      Defendants

307.  Defendant United States Small Business Administration (the "SBA") is an independent federal agency created and authorized pursuant to 15 U.S.C. § 633, *et seq.*  The SBA maintains an office at 310 West Wisconsin Ave., Milwaukee, Wisconsin 53203.

308.  Defendant Jovita Carranza ("Carranza," or the "Administrator") is the Administrator of the SBA, a Cabinet-level position, and is sued in her official capacity only, as the Administrator of the SBA.

309.   Authority to sue the Administrator is granted by 15 U.S.C. § 634(b), which states, in part:

> In the performance of, and with respect to, the functions, powers, and duties vested in him by this chapter the Administrator may—
> (1) sue and be sued in any court of record of a State having general jurisdiction, or in any United States district court, and jurisdiction

5

is conferred upon such district court to determine such
controversies without regard to the amount in controversy . . . .

310.      Steven Mnuchin (the "Secretary") is the Secretary of the Treasury

Department (the "Treasury") of the United States of America, and is sued in his

official capacity only as the Secretary of the Treasury Department.

311.      The United States of America is a sovereign nation dedicated to the

protection of life, liberty, and property, as set forth in the Bill of Rights and

amendments to the Constitution of the United States of America.

C.  <u>Relevant Statutory Provisions and Administrative Regulations</u>

312.      The CARES Act was signed into law by the President of the United

States on March 28, 2020, and is currently in effect.

313.      A true and accurate copy of the Paycheck Protection Program

("PPP") of the CARES Act is attached hereto as Exhibit A and is hereby

incorporated by reference.

314.      The PPP provisions of the CARES Act instruct the SBA to

promulgate rules as follows:

> SEC. 1114. EMERGENCY RULEMAKING AUTHORITY.
>
> Not later than 15 days after the date of the enactment of this Act, the
> Administrator shall issue regulations to carry out this title and the
> amendments made by this title without regard to the notice
> requirements under section 553(b) of title 5, Unites States Code.

315.      The CARES Act tasks the SBA with administering the PPP.   The

6

PPP provides at 15 U.S.C. § 636(a)(36)(F)(ii):

Delegated authority

(I) In general
For purposes of making covered loans for the purposes described in clause (i), a lender approved to make loans under this subsection shall be deemed to have been delegated authority by the Administrator to make and approve covered loans, subject to the provisions of this paragraph.

(II) Considerations
In evaluating the eligibility of a borrower for a covered loan with the terms described in this paragraph, a lender shall consider whether the borrower--
(aa) was in operation on February 15, 2020; and
(bb)(AA) had employees for whom the borrower paid salaries and payroll taxes; or
(BB) paid independent contractors, as reported on a Form 1099-MISC.

(iii) Additional lenders
The authority to make loans under this paragraph shall be extended to additional lenders determined by the Administrator and the Secretary of the Treasury to have the necessary qualifications to process, close, disburse and service loans made with the guarantee of the Administration.

316.     Pursuant to the PPP, the SBA did, in fact, promulgate regulations on April 1, 2020. A true and accurate copy of Business Loan Program Temporary Changes; Paycheck Protection Program, RIN 3245-AH34 (Interim Final Rule Apr. 1, 2020) ("SBA 3245"), as promulgated by the SBA, is attached hereto as Exhibit B and is hereby incorporated by reference.

317. SBA 3245 provides, in part:
Businesses that are not eligible for PPP loans are identified in

7

13 CFR 120.110 and described further in SBA's Standard Operating Procedure (SOP) 50 10, Subpart B, Chapter 2, except that nonprofit organizations authorized under the Act are eligible. SOP 50 10 can be found at

https://www.sba.gov/document/sop-50-10-5-lender-development-companyloan-programs

318.     SBA 3245 further provides that PPP loans with be provided on a first-come, first-served basis until funds are exhausted. [*See* Ex. B, p.13]. The PPP has a total monetary limit of $349,000,000,000.00 ($349 Billion).

319.     A true and accurate copy of Business Loan Program, 60 Fed. Reg. 64356 *et seq.* (proposed Dec. 15, 1995; to be codified at 13 C.F.R. § 120.110), as promulgated by the SBA, is attached hereto as Exhibit C and is hereby incorporated by reference.

320.     A true and accurate copy of SBA Business Loan Ineligible Businesses Rule, 13 C.F.R § 120.110 (2020), as actually enacted, is attached hereto as Exhibit D and is hereby incorporated by reference.

321.     13 C.F.R § 120.110 provides, in part: The following types of Businesses are ineligible:

*       *       *

(p) Businesses which:

(1) Present live performances of a prurient sexual nature; or

(2) Derive directly or indirectly more than de minimis gross

8

revenue through the sale of products or services, or the presentation of any depiction or display, of a prurient sexual nature;

These provisions are hereinafter referred to simply as the "Regulations."

322. A true and accurate copy of the relevant portion of SBA Standard Operating Procedure 50 10 5(K) – Lender and Development Company Loan Programs (Apr. 1, 2019), is attached hereto as Exhibit E and hereby incorporated by reference.

323. The SBA Standard Operating Procedure 50 10 5(K) – Lender and Development Company Loan Programs (Apr. 1, 2019) provides, in part, at Ch.2 (III)(A):

15. Businesses Providing Prurient Sexual Material (13 CFR § 120.110 (p))

a. A business is not eligible for SBA assistance if:

i. It presents live or recorded performances of a prurient sexual nature; or

ii. It derives more than 5% of its gross revenue, directly or indirectly, through the sale of products, services or the presentation of any depictions or displays of a prurient sexual nature.

b. SBA has determined that financing lawful activities of a prurient sexual nature is not in the public interest. The Lender must consider whether the nature and extent of the sexual component causes the business activity to be prurient.

9

     c. If a Lender finds that the Applicant may have a business aspect of a prurient sexual nature, prior to submitting an application to the LGPC (non-delegated) or requesting a loan number (delegated), the Lender must document and submit the analysis and supporting documentation to the Associate General Counsel for Litigation at PSMReview@sba.gov for a final Agency decision on eligibility. Upon approval by SBA, the Lender may submit the application to the LGPC or may proceed to process the loan under its delegated authority. A non-delegated Lender must submit a copy of SBA's approval with the application to the LGPC. A delegated Lender must retain its analysis, supporting documentation, and evidence of SBA's approval in its loan file and must submit the analysis and supporting documentation to SBA with any request for guaranty purchase. SBA also may review such documentation when conducting Lender oversight activities.

(These provisions are hereinafter referred to as "SOP.")

324.    Defendant SBA is responsible for formulating, issuing, and enforcing the Regulations and the SOP.

325.    A true and accurate exemplar copy of the SBA Paycheck Protection Program Borrower Application Form 2483 (Apr. 2020) is attached hereto as Exhibit F, and is hereby incorporated by reference.

## IV.   ALLEGATIONS OF FACT AS TO ALL CAUSES OF ACTION

401. Each Silk Exotic Gentlemen's Club (hereinafter, collectively "Silk") is an establishment that is open to the consenting adult public, is licensed by the

municipality in which it is located to sell alcoholic beverages, and is licensed to present erotic dance entertainment.

402.  The three Silk clubs located in Milwaukee are licensed as Public Entertainment Premises, pursuant to Milwaukee City Ordinance Ch 108. In compliance with MCO §108-22, the dancers at those clubs wear a costume made of nontransparent material that covers the areola and nipple of their breasts, their pubic hair, and the cleavage of their buttocks.

403.  The Silk club located in Middleton has a license to operate as a Dance Hall.  Its dancers appear semi-nude or nude, as is permitted by local ordinance.

404.  All of the entertainment provided by Silk is non-obscene (and not prurient), appeals to healthy human interests and desires, and is in full compliance with the numerous licenses and permits that are held by the Plaintiffs and have been reviewed by municipal authorities and renewed annually.

405.  None of the live performances at Silk are obscene or unlawful in any way.

406. No entertainer performing at any Silk has ever been charged with, let alone convicted of, the crime of obscenity.

407.  On March 17, 2020,  in response to the coronavirus pandemic, Wisconsin Governor Tony Evers ordered a statewide ban on all gatherings of

more than 10 people and also ordered all bars and restaurants closed as of 5 p.m. that day, except for delivery and pickup orders.

408. On March 23, 2020, Wisconsin Secretary of Health Andrea Palm issued Emergency Order # 12, also known as "Safer at Home," which ordered all Wisconsin residents to remain at home unless attending to essential business.

409. Each Silk club has been closed for business since 5 p.m. on March 17, 2020 and is currently shuttered as a result of those two orders.

410. As a direct and proximate result of such state-ordered closure, the Plaintiffs have suffered significant business losses, but plan to reopen when legally permitted to do so.

411. In order to mitigate their business losses and to provide monetary relief to their employees – since at least 75% of PPP loans are to be used for employee wages, the Plaintiffs determined to apply for a PPP loan.

412. The four Plaintiffs utilize the services of one bookkeeper, Theresa Weiss, and each Plaintiff maintains it business accounts at Associated Bank, located at W156 N5575 Pilgrim Road, Menomonee Falls, WI 53051.

413. On Friday, April 3, 2020, from her office at 11400 Silver Spring Road, Milwaukee, Wisconsin, Ms. Weiss submitted applications for PPP loans for each of the four Plaintiffs through Associated Bank.

12

414.  Each application was correctly and completely filled out and all necessary documentation was attached.

415. Pursuant to 15 U.S.C. § 636(a)(36)(F)(ii)(I), Associated Bank operates as a delegate of the SBA in the processing and approval or disapproval of the PPP loans sought by Plaintiffs.

416.  The Plaintiffs are fully qualified -- but for the Regulations and the SOP or the SBA's application thereof -- to receive a PPP loan under all relevant statutes, regulations, and procedures.

417.  However, on April 6, 2020, Ms. Weiss was informed by a representative of Associated Bank that the four applications would be denied.

418.  When Ms. Weiss inquired as to reason for the denial, a representative of Associated Bank emailed her a link to SBA SOP and directed her attention to "page 114, Section 15" which is 13 CFR § 120.110 (p) which states that a business

is not eligible for SBA assistance if it present live or recorded performances of a prurient sexual nature.

419. To date, neither Ms. Weiss nor the Plaintiffs have received any formal notification of rejection.

420. However, on April 7, 2020, a representative of Associated Bank informed Ms. Weiss that she was "still waiting on further review to take place."

421. There has been no further communication from Associated Bank.

422. The Plaintiffs have learned that numerous other similar businesses, which present non-obscene female performance dance entertainment of an "exotic," "topless" or fully nude variety have had their applications for PPP loans rejected by their SBA lending banks, based on their banks' stated belief that the business is disqualified by the Regulations and/or the SOP.

423. Specifically, the Plaintiffs have learned that other similar establishments have had their applications for PPP loans rejected on the belief

that the clubs present "live performances of a prurient sexual nature" within the meaning of 13 C.F.R. § 120.110(p).

424. The Plaintiffs also fear that the Regulations and the SOP will cause their applications to be delayed until all PPP loan funds are exhausted, rendering any later request for judicial relief to be moot.

425. The funds allocated for PPP loans are being extended on a first-come, first-served basis until the funds are exhausted.

426. The SOP provides that if the "Lender finds that the Applicant may have a business aspect of a prurient sexual nature" the lender is to email the SBA for a "final Agency decision on eligibility."

427. Given the pressures and workload placed on the SBA by the CARES Act and the COVID-19 pandemic, the Plaintiffs reasonably fear that no agency decision will be forthcoming while PPP funds remain, or that the SBA will decide that Plaintiffs are not eligible when there no time for them to obtain relief while PPP funds still remain.

428. In the event that Plaintiffs are unable to obtain PPP loans, they may lack the staff and/or funds to reopen following the COVID-19 pandemic, resulting in the permanent ruination of their businesses, the inability of Plaintiffs to engaged in protected First Amendment activity, and the inability of Plaintiffs'

staff, entertainers, and customers to continue engaging in or viewing protected First Amendment activity.

429. In asserting its First Amendment challenges to the Regulations and SOP, Plaintiff asserts not only its own rights but also the rights of its employees, and the entertainers who perform on its premises.

## V. VIOLATIONS OF LAW

501. The Regulations and the SOP violate and are contrary to the First Amendment of the United States Constitution, on their face and as applied to Plaintiffs, for numerous reasons including but not limited to:

    a. They are impermissible content-based restrictions on expression that do not pass muster under either strict scrutiny or intermediate scrutiny;

    b. They treat the performances at Plaintiffs' club as though they were obscene, and in so doing, fail to conform to the constitutional standards by which obscenity is defined and regulated;

    c. They violate the doctrine of unconstitutional conditions; and

    d. They are unconstitutionally vague under the vagueness standards for matters impacting speech and expression.

502. The Regulations and the SOP violate and are contrary to the Fifth Amendment of the United States Constitution, on their face and as applied to

16

Plaintiff, for numerous reasons including but not limited to:

a.   They treat establishments presenting certain forms of performance dance entertainment, such as Plaintiff, differently from establishments presenting other forms of entertainment or no entertainment, for no compelling, important, or rational reason;

b.   They treat workers at establishments presenting certain forms of performance dance entertainment, such as those operated by the Plaintiffs, differently from workers at establishments presenting other forms of entertainment or no entertainment, for no compelling, important, or rational reason;

c.   They violate the rights of Plaintiffs, their employees, and the entertainers who perform on their premises under the occupational liberty component of the Fifth Amendment; and

d.   They are impermissibly vague.

503.   Because it is clear and unambiguous as to which businesses are eligible for PPP loans under the CARES Act, including these Plaintiffs, the SBA lacked authority to promulgate regulations with restricted or otherwise "clarified" what businesses were eligible for PPP Loans.

17

## VI.   DAMAGES

601.     As a direct and proximate result of the unconstitutional aspects of the Regulations and SOP,  and the Defendants' and their delegates' application of the Regulations and the SOP against Plaintiffs and their interests, the Plaintiffs, Plaintiffs' employees, and the entertainers who perform on Plaintiffs'  premises have suffered and will continue to suffer irreparable injuries, including but not limited to financial ruin, business ruination, and the inability to present protected First Amendment protected entertainment.

602.      As a direct and proximate result of the invalid portions of the Regulations and SOP and the Defendants' and their delegates' application of the Regulations and the SOP against Plaintiffs and their interests, Plaintiffs' employees, and the entertainers who perform on Plaintiffs' premises have suffered and will continue to suffer irreparable injuries including but not limited to financial ruin and business ruination.

## VII.   CONDITIONS PRECEDENT

701.    All conditions precedent to this action, within the meaning of Rule 9(c), Fed. R. Civ. Pro., have been performed or have otherwise occurred.

## VIII.  PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs pray that the Court grant judgment against the Defendants as follows:

801.  Issue orders granting a Temporary Restraining Order, Preliminary, and Permanent Injunction enjoining the Defendants, as well as their employees, agent and representatives, including the SBA's lending banks, from enforcing or utilizing in any fashion or manner whatsoever, 13 C.F.R. § 120.110(p) and SBA SOP 50 10 5(K), Ch. 2(III)(A)(15) in regard to loan applications made pursuant to the Payroll Protection Program of the CARES Act;

802.  As part of those orders, order the Defendants, as well as their employees, agent and representatives, to notify, as expeditiously as possible, all SBA lending banks to immediately discontinue utilizing 13 C.F.R. § 120.110(p) and/or SBA SOP 50 10 5(K), Ch. 2(III)(A)(15) as criteria for determining PPP loan application eligibility, and to fully process all PPP loan applications without reference to such regulations and procedures;

803. As a further part of those orders, order the Defendants, as well as their employees, agent and representatives, including the SBA's lending banks, to restore Plaintiffs to the place in the application queue as they were at the time of application in the event that their applications have already been formally denied,

derailed, or paused because of the challenged regulations and procedures

challenged here;

804. Award monetary damages in amounts that will fairly compensate

the Plaintiffs for their injuries; and

805. Award the Plaintiff s their costs, attorneys' fees and litigation

expenses as well as any further relief this Court deems just.


Dated this 13th day of April, 2020


Respectfully submitted,

       Camelot Banquet Rooms, Inc.,
       Downtown Juneau Investments, LLC,
       Midrad, LLC, and
       PPH Properties I, LLC , Plaintiffs

       By

       ATTORNEYS FOR PLAINTIFFS

       THE JEFF SCOTT OLSON LAW FIRM, S.C.
       Jeff Scott Olson
       State Bar No. 1016284
       131 W. Wilson St., Suite 1200
       Madison, WI 53703
       Phone:      (608) 283-6001
       Fax:       (608) 283-0945
       E-mail:     jsolson@scofflaw.com

       */s/ Jeff Scott Olson*

20

_____

Jeff Scott Olson