**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

Camelot Banquet Rooms, Inc.;
Downtown Juneau Investments, LLC;
Midrad, LLC; and
PPH Properties I, LLC;

Plaintiffs,

v. Case No. 20-cv-601

United States Small Business Administration; Jovita Carranza, in her official capacity as Administrator of the Small Business Administration; United States of America; and Steven Mnuchin, in his official capacity as United States Secretary of Treasury,

Defendants.

---

J.R. Schuster, LLC;

Plaintiff,

v. Case No. 20-cv-634

United States Small Business Administration; Jovita Carranza, in her official capacity as Administrator of the Small Business Administration; United States of America; and Steven Mnuchin, in his official capacity as United States Secretary of Treasury,

Defendants.

---

# GOVERNMENT'S EMERGENCY MOTION FOR STAY OR, IN THE ALTERNATIVE FOR THIRTY-SIX ADDITIONAL HOURS FOR COMPLIANCE

---

## INTRODUCTION

Last Friday, May 1, this Court entered a preliminary injunction that requires defendants, "[b]y Monday, May 4, 2020, at 12:00 p.m.," to "transmit guarantee authority" to lenders so that plaintiffs—businesses that operate "Gentlemen's Clubs" that present live erotic dancing—may receive loans under the Paycheck Protection Program. The Government intends to appeal that decision, and respectfully asks that this Court stay its order pending the outcome of that appeal. In the alternative, because the Government's is also seeking a stay from the Seventh Circuit, the Government asks that this Court extend the compliance deadline by thirty-six hours to allow the Court of Appeals additional time to rule on the Government's motion for a stay.

Absent a stay, or at least a short extension to the compliance deadline to allow the Seventh Circuit to rule on the motion for a stay, SBA will be forced to obligate taxpayer funds to underwrite loans to businesses that the SBA and Congress have determined are not entitled to such funds, to the detriment of other eligible Paycheck Protection Program borrowers who are entitled to those funds under the law.

## ARGUMENT

In determining whether to grant a stay, this Court considers "the moving party's likelihood of success on the merits, the irreparable harm that will result to each side if the stay is either granted or denied in error, and whether the public interest favors one side or the other." *In re A & F Enterprises, Inc. II*, 742 F.3d 763, 766 (7th Cir. 2014). Each of these considerations weighs in favor of staying the district court's remand orders pending appeal.

### A. The Government Is Likely To Succeed On the Merits

#### 1. The SBA Has Statutory Authority to Promulgate Its Regulation and Apply it to the Paycheck Protection Program

At the outset, the Government is likely to ultimately succeed on the merits.

The Small Business Act "empower[s]" the SBA "to make loans to any small business concern," 15 U.S.C. § 636(a), and to "make such rules and regulations as [it] deems necessary to carry out the authority vested in" it, and to "take any and all actions . . . [that] [it] determines . . . are necessary or desirable in making . . . loans," *id.* § 634(b)(6), (7); *see also* 15 U.S.C. § 633(d) (authorizing Loan Policy Board to establish general policies regarding SBA loan assistance eligibility "particularly with reference to the public interest involved"); *see* 5 U.S.C. App., Reorg Plan No. 4 of 1965, §§ 11(b), 13(a) (transferring functions of Loan Policy Board to the SBA Administrator). The Supreme Court has recognized that the Act grants the SBA "extraordinarily broad powers." *Small Business Admin. v. McClellan*, 364 U.S. 446, 447 (1960).

Pursuant to that broad authority, the agency has promulgated numerous regulations specifying the terms and conditions of SBA loans. *See*, *e.g.*, 13 C.F.R. §§ 120.100, 120.101, 120.150. And the agency has long specified certain businesses that are ineligible to receive SBA loans. 13 C.F.R. § 120.110 (listing 18 categories of businesses that are ineligible). The agency promulgated the restriction at issue here—on businesses that present live entertainment of a prurient sexual nature—in 1996. *See* 60 Fed. Reg. 64356, 654360 (Dec. 15, 1995) (proposed rule). As the agency explained in the notice and comment process, the SBA had determined it would "not provide financial assistance to small businesses which present live performances of a prurient sexual nature," such as businesses that feature "nude dancing," because it considered such a restriction "to be consistent with [the SBA's] obligation to direct its limited resources and financial assistance to small businesses in ways which will best accomplish SBA's mission, serve its constituency, and serve the public interest." 60 Fed. Reg. at 654360.

The regulation is comfortably within the SBA's statutory authority to establish restrictions that the agency considers "necessary or desirable in making . . . loans" to fulfill the public purposes

of the Small Business Act in light of the agency's limited resources. 15 U.S.C. § 634(b)(6), (7); *see id.* § 636(a).

In holding that the Small Business Act does not authorize the agency's restriction here, this Court relied on the fact that the "the Small Business Act authorizes the SBA to make loans to *any* small business concern." Order 16. To the contrary, however, the fact that the Small Business Act "authorizes" or "empowers" the agency to issue loans to any small business concern in no way suggests that the agency *must* issue loans to any type of small business, or that the agency cannot promulgate regulations to specify certain types of businesses the agency believes it would not be in the public interest to subsidize in light of the agency's resources. Congress in the SBA gave the agency extremely broad authority to issue regulations to implement the loan programs that it administers. *See City of Arlington, Tex. v. F.C.C.*, 569 U.S. 290, 296 (2013) ("Congress knows to speak in plain terms when it wishes to circumscribe, and in capacious terms when it wishes to enlarge, agency discretion.").

This Court also found that the SBA lacks the authority to apply its regulation to Paycheck Protection Program loans created by the CARES Act. *See* Order 14-15. However, contrary to this finding, Congress in the CARES Act chose to place the Paycheck Protection Program under the SBA's existing Section 7(a) loan program, and provided that Paycheck Protection loans are to be provided "under the same terms, conditions, and processes" as other Section 7(a) loans unless otherwise specified. 15 U.S.C. § 636(a)(36)(B). Congress specified several conditions that, although they apply to ordinary Section 7(a) loans, do not apply to Paycheck Protection Program loans. *See, e.g.*, *id.* at § 636(a)(36)(D) ("increas[ing] eligibility for certain small businesses and organizations"). But Congress did not amend or alter the SBA's longstanding restriction on providing small-business loans to businesses engaged in live performances of a prurient sexual

nature. "[I]t is generally presumed that Congress acts intentionally and purposefully in the disparate inclusion or exclusion" of statutory provisions, particularly in the same Act. *Russello v. United States*, 464 U.S. 16, 23 (1983) (quotation marks omitted).

This Court expressed doubt that Congress had "combed through all SBA regulations applicable to § 7(a)." Order 15. But regardless of whether Congress did, in fact, "comb[] through" all of the SBA's regulations, the text of the statute clearly applies those regulations to the Paycheck Protection Program, unless otherwise specified. *See* 15 U.S.C. § 636(a)(36)(B); *see also Russello*, 464 U.S. at 23. And in any event, it is reasonable to assume that Congress was aware of the restriction at issue here, as it is contained in the same regulation as other restrictions that Congress explicitly chose to amend for purposes of the Paycheck Protection Program. *Compare* 13 C.F.R. § 120.110(a) (excluding non-profits from SBA loans), *with* 15 U.S.C. § 636(a)(36)(D)(i) (allowing Paycheck Protection loans to various non-profits).

**2. The Restriction Applies to Plaintiffs' Businesses**

Section 120.110(p) makes SBA loans unavailable to "[b]usinesses which . . . [p]resent live performances of a prurient sexual nature." 13 C.F.R. § 120.110(p). Plaintiffs here are businesses that are "licensed . . . to present erotic entertainment," *Camelot* Compl. ¶ 305; *see also Schuster* Compl. ¶¶ 39, 41.. Dancers perform erotic dancing at plaintiffs' establishments either nude or semi-nude. *See Camelot* Compl. ¶¶ 305, 402-03; *Schuster* Compl. ¶¶ 39, 41. Businesses that feature live dancing explicitly intended to be "erotic" undoubtedly falls within the plain language of the regulation.

This Court faulted the government for not "paus[ing] to address the threshold issue of whether the" SBA's regulation applies to plaintiffs. *See* Order 13. But no "pause" is necessary, as plaintiffs' conduct falls within the heart of the regulation. Indeed, plaintiffs themselves did not

argue that they are entitled to Paycheck Protection Program loans because the regulation by its terms does not apply to them; rather, plaintiffs argued that the regulation should be invalidated as applied to them because it violated their First and Fifth Amendment rights, or because the SBA lacked authority to promulgate its regulation. *See Camelot* Compl. ¶¶ 501-03; *Schuster* Compl. ¶¶ 71-79.

This Court questioned whether the regulation encompasses "*semi*-nude dancing," because at least some of plaintiffs' businesses are required by local ordinance to wear "at least pasties and G-strings." Order 13 (emphasis added); *see Camelot* Compl. ¶¶ 501-03. But the regulation does not make any distinction between "fully" and "semi" nude dancing; it prohibits SBA small-business loans to businesses that "[p]resent live performances of a prurient sexual nature." 13 C.F.R. § 120.110(p). Even if dancers at some of the plaintiffs' establishments wear certain materials in accordance with local law to make the dancing "slightly less graphic," plaintiffs' businesses are nonetheless licensed to offer live performances that are explicitly intended to be "erotic," *Barnes v. Glen Theater, Inc.*, 501 U.S. 560, 571 (1991), and the regulation applies.

**3. The Restriction Is Constitutional**

The regulation at issue is fully consistent with the Constitution, and this Court's contrary holding is inconsistent with the precedent of both the Supreme Court and the Seventh Circuit.

**a.** The First Amendment "protects the right to be free from government abridgement of speech." *Ysursa v. Pocatello Educ. Ass'n*, 555 U.S. 353, 358 (2009). The First Amendment does not require, however, that government "assist others in funding the expression of particular ideas." *Id.*; *see Davenport v. Washington Educ. Ass'n*, 551 U.S. 177, 190 (2007) ("[T]he First Amendment does not require the government to enhance a person's ability to speak."). Because "a legislature's decision not to subsidize the exercise" of First Amendment speech "does not

infringe the right," *Regan v. Taxation With Representation of Washington*, 461 U.S. 540, 549-50 (1983), the "government can make content-based distinctions when it subsidizes speech," *Davenport*, 551 U.S. at 188-89, and its decision "is not subject to strict scrutiny," but rather rational-basis review. *Regan*, 461 U.S. at 549-50; *Ysursa*, 555 U.S. at 359. Under rational-basis review, the government may not "aim at the suppression of dangerous ideas," *Regan*, 461 U.S. at 543-49, but lawmakers otherwise have "broad discretion" "to make content-based judgments in deciding what private speech to" fund, *United States v. American Library Ass'n, Inc.*, 539 U.S. 194, 204-05 (2003) (plurality op.); *accord Rust v. Sullivan*, 500 U.S. 173, 194 (1991) (Congress may "define the limits of [a] Government spending program" by "specif[ying] the activities the [government] wants [or does not want] to subsidize").

Applying these principles, the Supreme Court has repeatedly upheld under rational-basis review laws that deny government subsidies, or their equivalents, to businesses engaged in activities that are protected by the First Amendment, but that the government has chosen as a matter of policy not to fund. In *Regan*, for example, the Supreme Court rejected a First Amendment Free Speech and Fifth Amendment Equal Protection challenge to a statute that denied tax-exempt status to organizations engaged in substantial lobbying activities. 461 U.S. at 542. The Court explained that Congress had not restricted or regulated "any First Amendment activity," it "ha[d] merely refused to pay for the lobbying out of public monies," which did not violate the Constitution. *Id.* at 545-46; *accord Cammarano v. United States*, 358 U.S. 498, 513 (1959) (upholding regulation denying business expense deductions for lobbying activities). "Although [the plaintiff] [did] not have as much money as it want[ed], and therefore [could not] exercise its freedom of speech as much as it would like, the Constitution 'does not confer an entitlement to

such funds as may be necessary to realize all the advantages of that freedom.'" *Regan*, 461 U.S. at 549-50 (quoting *Harris v. McRae*, 448 U.S. 297, 318 (1980)).

Similarly, in *Ysursa v. Pocatello Education Association*, the Supreme Court upheld a state law that prohibited payroll deductions for political purposes. The Court acknowledged that "unions face[d] substantial difficulties in collecting funds for political speech without using payroll deductions," but made clear that the State was "under no obligation to aid the unions in their political activities." *Id.* at 359. And the Court concluded that it was "plainly reasonable" for the State to choose not to do so. *Id.* at 359-60; *see Wisconsin Educ. Ass'n Council v. Walker*, 705 F.3d 640, 645-46 (7th Cir. 2013) (applying *Regan*, *Ysursa*, and similar cases to reject a challenge to a state law that "subsidize[d] the speech of one group, while refraining from doing so for another").

**b.** This precedent forecloses plaintiffs' challenge. The Paycheck Protection Program is a government subsidy to small businesses, which makes available billions of dollars in special loans that have a capped interest rate, do not require collateral, are guaranteed by the government, *see* 15 U.S.C. § 636(a)(36)(H)-(L), and are eligible for loan forgiveness up to the full principal amount borrowed, *see* CARES Act, § 1106(b)-(c), 134 Stat. at 298. Although plaintiffs may be experiencing economic difficulties as a result of the COVID-19 pandemic, and may "face substantial difficulties" pursuing their First Amendment activities in the absence of a Paycheck Protection Program loan, the government "is under no obligation to aid" plaintiffs by providing them such a loan. *See Ysursa*, 555 U.S. at 359; *Regan*, 461 U.S. at 549-50. The government has not restricted or regulated plaintiffs' First Amendment activities, and plaintiffs are "free to engage in such speech as they see fit." *Ysursa*, 555 U.S. at 359. Congress and the SBA have "merely refused to pay for" plaintiffs' activities "out of public monies." *Regan*, 461 U.S. at 546; *see Ysursa*, 555 U.S. at 359; *Wisconsin Educ. Ass'n Council*, 705 F.3d at 646-47.

That choice is "plainly reasonable." *Ysursa*, 555 U.S. at 359. The SBA has restricted government-backed small-business loans to businesses engaged in live erotic performances for nearly twenty-five years. The restriction does not "[a]im at the suppression of" any idea. *See Regan*, 461 U.S. at 550. Rather, it reflects longstanding SBA policy that it would not be in the agency or the public's interest for the SBA to direct its "limited resources and financial assistance" to "businesses engaging in lawful activities of an obscene, pornographic, or prurient sexual nature." 60 Fed. Reg. at 64360. And Congress chose not to alter that longstanding restriction in creating the temporary Paycheck Protection Program, and making substantial but nonetheless limited public funds available to subsidize certain small businesses during the COVID-19 pandemic. As the Supreme Court explained in *Regan*, the "selection of particular entities or persons for entitlement to this sort of largesse is obviously a matter of policy and discretion," and the political branches are well positioned to "determine whether the advantage the public would receive from" subsidizing particular activity is "worth the money." *Regan*, 461 U.S. at 549, 551.

**c.** This Court's contrary holding is inconsistent with *Regan*, *Ysursa*, and similar cases. This Court concluded that the regulation likely fails rational-basis review because it is "aimed at suppressing what the government deems to be a dangerous" idea. Order 21. This Court's only basis for that conclusion, however, was the fact that the government has chosen to subsidize some types of business during the COVID-19 pandemic, but not others. *See* Order 21-24. The Supreme Court has long made clear, however, that "[a] refusal to fund protected activity, without more, cannot be equated with the imposition of a 'penalty' on that activity." *Harris v. McRae*, 448 U.S. 297, 318 & n. 19 (1980); *accord Rust v. Sullivan*, 500 U.S. 173, 193-94 (1991) (same).

Moreover, the SBA has not, contrary to this Court's suggestion, "singled out" plaintiffs' businesses "for unfavorable treatment," while providing funds to every other type of small

business. Order 18. As discussed, the SBA's restrictions generally restrict Section 7(a) loans to several different types of businesses, and Congress left several of those restrictions in place with respect to CARES Act funds, including, for example, the restriction on providing Paycheck Protection loans to businesses primarily engaged in political and lobbying activities. *See* 13 C.F.R. § 120.100(r). There is no basis to conclude that the government's restriction on providing special, small-business loans to these businesses is an attempt to "suppress[]" any speech. Order 21. Rather, these businesses can "exercise their freedoms" as they see fit, "and obtain any other aid available to them," as the SBA explained in promulgating its regulation. *See* 60 Fed. Reg. at 64360. The government has merely chosen as a matter of policy that it is not the best use of its limited resources to subsidize these businesses out of the public fisc. *See* 60 Fed. Reg. at 64360; *Regan*, 461 U.S. at 545-46.

**B. The Remaining Factors Also Favor a Stay**

The balance of the harms and consideration of the public interest also weigh in favor of a stay. Absent a stay, SBA will be forced to obligate taxpayer funds to underwrite loans to businesses that are ineligible for those loans under the SBA's longstanding regulation and the CARES Act. The government has a significant interest in not "allow[ing] taxpayer dollars to be spent" in a manner that both Congress and the SBA have determined is not in the public interest. *California v. Azar*, 927 F.3d 1068, 1080 (9th Cir. 2019) (per curiam).

That concern is particularly pronounced here. As plaintiffs and this Court acknowledge, the demand for Paycheck Protection Program funds is likely to far surpass the amount of money that Congress has appropriated. Thus, any allocation of funds to plaintiffs will necessarily be at the cost of denying it to other businesses—restaurants, hotels, retail stores, and others. And as this Court recognized, "it is reasonable to infer that *any* small business" is struggling during this time,

and that their livelihoods may be threatened. Order 29. Even assuming the government later prevails in this litigation and recoups the funding—though it is far from clear that recoupment is either legally or practically feasible in these circumstances—that relief may come too late for eligible businesses that would have received these funds but for the district court's erroneous order.

The Government's and the public's interest outweighs plaintiffs' interests in these circumstances. Plaintiffs assert that they will suffer irreparable harm because "the loss of First Amendment Freedoms is presumed to constitute irreparable injury for which money damages are inadequate." Order 26-27. But as explained, the government has not restricted or regulated plaintiffs' First Amendment activities, and plaintiffs remain free to present erotic dance entertainment using funds other than Paycheck Protection loans. And although plaintiffs may be suffering financial hardships, plaintiffs are long-accustomed to operating without access to government-backed small-business loans, as the SBA's restriction has been in place for nearly twenty-five years.

**C. In the Alternative, this Court Should Extend the Government's Deadline by Thirty-Six Hours.**

If this Court denies the Government's request for a stay pending appeal, the Government respectfully requests that the Court extend the current compliance deadline by thirty-six hours, until May 6, 2020 at 12:00 a.m. Today, the Government will ask the Seventh Circuit to stay the preliminary injunction issued in this case. The Court of Appeals is unlikely to rule on that motion prior to the current deadline for compliance. Accordingly, the Government respectfully asks that this Court briefly extend the deadline contained in its preliminary injunction so that the Seventh Circuit will have time to rule on the motion.

## CONCLUSION

For the foregoing reasons, the Court should stay its preliminary injunction pending appeal. In the alternative, the Court should extend the Government's compliance deadline by thirty six hours.

Dated this 4th day of May, 2020.


MATTHEW D. KRUEGER
United States Attorney

By: s/Emily A. Constantine

EMILY A. CONSTANTINE
Assistant United States Attorney
Wisconsin Bar No. 1087257
CARTER B. STEWART
Wisconsin Bar No. 1117543
Office of the United States Attorney
517 E. Wisconsin Avenue, Room 530
Milwaukee, Wisconsin 53202
Phone: (414) 297-1700
Fax: (414) 297-4394
emily.constantine@usdoj.gov
carter.stewart@usdoj.gov